COLUMBUS BAR ASSOCIATION *v.* PEDEN.

[Cite as *Columbus Bar Assn. v. Peden,* 134 Ohio St.3d 579, 2012-Ohio-5766.]

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct, including failing to maintain client funds in a separate account, not disclosing to client attorney's failure to carry professional-liability insurance, and failing to provide competent representation or to act with reasonable diligence in representing a client—Indefinite suspension.*

(No. 2012-0318—Submitted May 23, 2012—Decided December 7, 2012.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 10-094.

_____

**Per Curiam.**

{¶ 1} Respondent, John Joseph Peden of Columbus, Ohio, Attorney Registration No. 0021233, was admitted to the Ohio bar in 1983. The Board of Commissioners on Grievances and Discipline recommends that we indefinitely suspend Peden's license to practice law, based on findings that Peden engaged in a pattern of misconduct involving multiple violations of the Rules of Professional Conduct. The board also recommends that we require Peden to meet certain conditions prior to reinstatement of his law license. We adopt the findings of professional misconduct, the recommended sanction, and the reinstatement conditions.

**Background**

{¶ 2} In May 2008, we ordered a six-month stayed suspension of Peden's license for repeatedly overdrawing his client trust account, not maintaining a trust account for a period of time, depositing unearned client funds into his office operating account, failing to immediately refund an unearned fee,

and failing to cooperate in the initial stages of the disciplinary investigation. *Columbus Bar Assn. v. Peden*, 118 Ohio St.3d 244, 2008-Ohio-2237, 887 N.E.2d 1183, ¶ 3-4. Peden's stayed suspension included one year of monitored probation, with a specific focus on his client trust account. Peden was also diagnosed with a mental disability at this time, and we ordered that he provide periodic reports from his psychologist on his ability to competently and ethically practice law and that he remain in compliance with his contract with the Ohio Lawyers Assistance Program ("OLAP"), which required his continued treatment. *Id*. at ¶ 5-8.

{¶ 3} On June 15, 2009, we found Peden in contempt and imposed an actual suspension for not paying the board costs from his disciplinary proceeding. Peden was reinstated on September 15, 2009, subject to the conditions of his stayed suspension. Peden's monitored probation has remained in effect since that time.

{¶ 4} On December 6, 2010, relator, the Columbus Bar Association, filed a three-count complaint charging Peden with professional misconduct. The complaint alleged that Peden (1) mismanaged his client trust account, (2) failed to return unearned fees, (3) failed to keep clients reasonably informed of their case status, (4) failed to provide competent and diligent representation, (5) failed to notify clients that his malpractice insurance had lapsed, (6) failed to notify clients of his suspension from the practice of law, (7) failed to provide reasonable notice of withdrawal of representation and to protect clients' interests following withdrawal, and (8) failed to cooperate in the ensuing disciplinary investigation.

{¶ 5} Relator filed an amended complaint on March 18, 2011, adding four more counts charging Peden with similar misconduct.[1] Relator's amended

---

1. Relator elected not to proceed on count six of the amended complaint, and it is dismissed.

complaint also alleged for the first time that Peden had engaged in misconduct involving dishonesty, deceit, or misrepresentation.

{¶ 6} A panel of the board conducted a hearing. The panel heard the testimony of eight witnesses, including Peden, and admitted 77 exhibits, 70 of which were submitted by relator. The panel issued a report finding that Peden had violated 12 different Rules of Professional Conduct. The panel recommended that Peden receive an indefinite suspension from the practice of law. The panel also recommended that Peden fulfill several specific conditions prior to being reinstated.

{¶ 7} The board adopted the panel's findings of misconduct, the indefinite suspension, and the reinstatement conditions.

### Misconduct

*Count Three—Trust-Account Overdrafts*

{¶ 8} On May 11, 2009, Peden overdrew his client trust account at Fifth Third Bank by $200. Four days later, on May 15, he again overdrew his trust account, this time by $133. On January 6, 2010, Peden overdrew this account a third time, by the sum of $19.81. During the time of these overdrafts, Peden was under monitored probation by the relator. Peden, however, did not contact his monitor during this time period.

{¶ 9} Peden acknowledged during the board hearing that he had not maintained a client trust account for several months in 2009. He reopened a trust account with Chase Bank in June 2010. But on March 29, 2011, less than four months before the board hearing, Peden overdrew this trust account by $88.

{¶ 10} Based on the foregoing evidence, the board found that Peden had violated Prof.Cond.R. 1.15(a) (requiring a lawyer to safeguard client funds in an interest-bearing client trust account, separate from the lawyer's own funds) and 8.4(h) (engaging in conduct that adversely reflects on the lawyer's fitness to practice law). We adopt these findings of fact and misconduct.

*Count One—Willmore/Plaisted*

{¶ 11} On April 1, 2009, Peden agreed to represent Erin Willmore in a custody dispute involving her infant daughter. Willmore was also a victim of domestic violence, and she wanted Peden to obtain a civil protection order on her behalf. Peden and Willmore entered into a written fee agreement that required a $2,500 retainer and a rate of $225 per hour.

{¶ 12} Willmore's mother, Karen Plaisted, paid the fees on her behalf. During April 2009, Plaisted made five payments to Peden for attorney fees and costs totaling $2,178. Peden deposited this money into his office operating account instead of his client trust account, even though some of this money had not yet been earned or paid out as case expenses. The money received by Peden included $175 that was to be used to hire a process server. Peden did not hire the process server and never repaid this money to Plaisted.

{¶ 13} Peden only partially performed the services he was paid for. Peden issued one billing statement to Plaisted, dated April 10, 2009, reflecting that he had earned attorney fees in the amount of $1,260 based on 5.6 hours of work on the case. Plaisted made several requests for additional billing statements, but Peden never sent a further accounting. He also failed to return repeated phone calls from Willmore and Plaisted, and he did not inform them of any work he might have done after April 10, 2009. And Peden never returned any unearned money to Plaisted, despite promising that he would.

{¶ 14} In June 2009, Peden was found in contempt for not paying the board costs from his disciplinary proceeding and was suspended from the practice of law. Peden never informed Willmore of his suspension and made no attempt to return Willmore's case file or to have her case transferred to another attorney. And once he was reinstated in September 2009, Peden did not contact Willmore about the status of her case.

{¶ 15} In addition, Peden's malpractice insurance lapsed during his suspension and was not renewed after he was readmitted in September 2009. Peden, however, failed to notify Willmore that he did not have malpractice insurance.

{¶ 16} Based on the foregoing conduct, the board found that Peden violated Prof.Cond.R. 1.1 (requiring a lawyer to provide competent representation), 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(3) (requiring a lawyer to keep a client reasonably informed of the status of a matter), 1.4(a)(4) (requiring a lawyer to respond to a client's reasonable request for information), 1.4(c) (requiring a lawyer to notify clients that malpractice insurance had lapsed), 1.15(d) (requiring a lawyer to render an accounting of funds upon request of a client), 1.16(e) (requiring a lawyer who withdraws from employment to promptly return unearned fees), 1.16(d) (withdrawing from representation without taking reasonable steps to protect the client's interest), 1.15(a), and 8.4(h).[2] We adopt these findings of fact and misconduct.

*Count Two—Culwell*

{¶ 17} In November 2008, Peden agreed to represent James C. Culwell in a divorce case. No written fee agreement exists in the record, but according to Peden, the agreed rate was $225 per hour. Between November 2008 and June 2009, Peden requested and received from Culwell a total of $4,925 in attorney fees and expenses. Peden deposited all of this money into his office account, instead of keeping it in his client trust account until earned or paid out as expenses.

---

2. The board and panel reports cite Prof.Cond.R. 1.5(d) and 1.6(d). Likewise, the amended complaint cites Prof.Cond.R. 1.5(d). After reading the parenthetical descriptions following the citation of these rules, it is evident that the intended references were to Prof.Cond.R. 1.15(d) and 1.16(d).

**{¶ 18}** In January 2009, Peden filed a complaint for divorce on Culwell's behalf. Culwell had paid Peden $179 specifically to cover the filing fee. Despite this, Peden's check to the trial court for the filing fee was returned for insufficient funds. Peden never told Culwell that the check was dishonored, and Culwell did not learn of this until the trial court contacted him. Because the filing fee remained unpaid, Culwell had to issue his own check to cover the fee. Peden has never refunded the filing fee to Peden, and in the end, Culwell paid the filing fee twice: once to Peden and once to the court.

**{¶ 19}** On June 15, 2009, this court suspended Peden for contempt and ordered him to notify his clients in writing of the suspension. Peden, however, did not send written notice of his suspension to Culwell at that time. A hearing was scheduled in Culwell's divorce case for June 24, 2009. Culwell expected that Peden would contact him to discuss strategy for the hearing, and he made repeated calls to Peden's office, which were not returned. Peden finally called Culwell the evening before the hearing and told him for the first time that he had been suspended from the practice of law and could not attend the hearing. Peden told Culwell that he had obtained a continuance of the hearing, but Peden never responded to further inquiries from Culwell and did not contact Culwell after his reinstatement to find out about the status of his case. In fact, Peden did no work for Culwell after June 15, 2009, and Culwell had to hire another attorney to complete the case at a cost of $5,000. Culwell's new counsel entered an appearance in July 2009 and completed the case by November 2009.

**{¶ 20}** Peden provided two billing statements for work performed on Culwell's case: one dated February 19, 2009, and the other April 3, 2009. The bills reflect a total of $1,898.75 in attorney fees and other costs charged to Culwell. Peden was unable to explain why the money Culwell paid him ($4,925.00) and the amount billed for services and expenses ($1,898.75) differed

by $3,026.25. Culwell sent two requests to Peden for a final accounting of his bill. Culwell received neither a response nor a refund.

{¶ 21} In addition, Peden testified that he had no malpractice insurance while he represented Culwell. Yet Peden did not inform Culwell about his lack of coverage.

{¶ 22} The board found in regard to Culwell's case that Peden violated Prof.Cond.R. 1.1, 1.3, 1.4(a)(3), 1.4(a)(4), 1.4(c), 1.15(a), 1.15(d), 1.16(e), 1.16(d), and 8.4(h). We adopt these findings of fact and misconduct.

*Count Four—Nessley*

{¶ 23} During the first week of November 2009, Rose and Nick Nessley hired Peden to represent them in an adoption proceeding. Peden neglected, however, to tell the Nessleys that he did not have malpractice insurance when they retained him.

{¶ 24} The Nessleys paid Peden a flat fee of $750 to complete the case and an additional $400 for filing fees. Peden deposited both sums into his office account instead of his client trust account.

{¶ 25} During their initial meeting, Peden told the Nessleys that he would have the adoption paperwork completed and ready to be filed by the end of November 2009. After their initial consultation with Peden, the Nessleys made numerous attempts to contact him. Peden did not respond to these inquiries until January 2010, when he asked for the $400 filing fee. Mr. Nessley wrote a check to Peden on January 27, 2010, but Peden did not submit the adoption petition to the probate court until March 2010.

{¶ 26} Between the end of January—when Peden received the $400 filing fee—and early March, the Nessleys made several more unsuccessful attempts to contact Peden. In May 2010, the probate court contacted Mrs. Nessley to tell her that Peden's $400 check for the filing fee had been returned for insufficient funds. Mrs. Nessley contacted Peden, and he promised to refund $800. Peden has never

refunded the $800, nor has he made restitution to the Nessleys or the court for the $400 filing fee. As a result of Peden's neglect, the Nessleys were forced to hire new counsel to complete the adoption at additional cost.

{¶ 27} The board found, and we agree, that in representing the Nessleys, Peden violated Prof.Cond.R. 1.1, 1.3, 1.4(a)(3), 1.4(a)(4), 1.4(c), 1.15(a), 1.16(e), and 8.4(h).

*Count Five–Petrovski*

{¶ 28} In March 2009, Verka Petrovski hired Peden to represent her in divorce proceedings. The written fee agreement was for an hourly rate of $225. Between April 2009 and November 2010, Petrovski made installment payments to Peden totaling $6,260 for attorney fees and costs.

{¶ 29} Peden deposited the initial payment of $1,675 into his client trust account on April 23, 2009. Peden's billing records for April 2009 indicate that he had worked a total of 4.25 hours on Petrovski's case and, based on his charged rate of $225 an hour, that he had earned fees of $956.25. Peden did no other work on her case until August 2010, so his client trust account should have contained $718.75 in unearned funds belonging to Petrovski. Yet at the end of April 2009, Peden's trust account showed an ending balance of $192.14. By the end of May 2009, the balance was $2.14.

{¶ 30} As to the remaining installment payments made by Petrovski, none were deposited into Peden's client trust account or otherwise maintained in trust until earned as fees or paid out for case expenses. Peden provided one billing statement to Petrovski on November 8, 2010, reflecting that she had made payments of $4,950 instead of the $6,260 that she had actually paid, a discrepancy of $1,310. The billing statement also indicated that Petrovski owed Peden $45, which was based on the difference between the fees Peden claimed to have earned ($4,995) and the money that Peden claimed to have received from Petrovski ($4,950). Peden did not provide a final accounting to Petrovski, and he could not

explain what happened to the $1,310 in unearned funds that was not reflected on the billing statement or maintained in his client trust account.

**{¶ 31}** Peden also failed to keep Petrovski informed of the status of her case, but he repeatedly demanded more and more money from her. According to Petrovski, every payday Peden would call her and ask for money to perform certain tasks. Even though Peden continued to ask Petrovski to pay for work he supposedly had performed, he did little work on her case beyond filing her divorce action on August 24, 2010. Petrovski was subsequently forced to hire other counsel to complete her case, at an additional cost of $7,000. Petrovski demanded a refund from Peden, but he has not returned any money to her.

**{¶ 32}** Peden was suspended from the practice of law during his representation of Petrovski, yet he did not inform her of his suspension. Peden's malpractice insurance also lapsed during this time, but he did not provide this information to Petrovski.

**{¶ 33}** In regard to Petrovski's case, the board found that Peden had violated Prof.Cond.R. 1.1, 1.3, 1.4(a)(3), 1.4(a)(4), 1.4(c), 1.15(a), 1.15(d), 1.16(e), 8.4(h), and 8.4(c) (engaging in conduct involving dishonesty, deceit, or misrepresentation). We agree with the board's findings of fact and misconduct.

*Count Seven—King*

**{¶ 34}** Peden agreed to represent Theresa King in obtaining a dissolution of her marriage. King paid Peden a $1,000 retainer on June 23, 2010. Peden deposited this money into his office account and did not maintain the funds in trust until earned or paid out as case expenses.

**{¶ 35}** Peden represented King from June 2010 until April 2011. Peden had no malpractice insurance for the first eight months that he represented King, but he never advised her of his lack of coverage.

**{¶ 36}** On September 2, 2010, Peden called King and urgently requested that she pay him $300 for filing fees. She asked if it could wait until the next day,

but Peden said he needed it that afternoon. She wrote Peden a $300 money order, and Peden immediately deposited the money into his office account instead of his client trust account. Moreover, Peden did not file King's dissolution petition until March 2011, six months later.

{¶ 37} From the time she retained Peden in June until the end of September 2010, King repeatedly attempted to contact Peden to ascertain the status of her case. Peden did not promptly return her calls or provide any update on the status of her case. On September 29, 2010, King sent Peden a letter asking for a refund of her $1,300. Peden did not refund King's money. Peden eventually completed King's case—seven months after receiving her letter—and she is no longer seeking a refund.

{¶ 38} The board found that in representing King, Peden violated Prof.Cond.R. 1.4(a)(3), 1.4(a)(4), 1.4(c), and 1.15(a). The board also found that relator did not establish by clear and convincing evidence that Peden had violated Prof.Cond.R. 1.1, 1.3, 1.15(d), 1.16(e), and 8.4(h). We adopt these findings of fact and misconduct with two exceptions.

{¶ 39} King's dissolution was not a complicated matter. King's husband did not contest the matter, and there were no children, no property, and no financial issues involved. Even Peden agreed that this was a simple, uncontested case. Yet it took nine months for Peden to file King's petition for dissolution. Peden, in fact, admitted during the panel hearing that he did not work diligently on King's case.

{¶ 40} The board, however, found that in light of King's testimony, the evidence was insufficient to support a finding that Peden had failed to diligently pursue her case. But King's testimony reflects that she was clearly frustrated with the time it took for Peden to file her case and that this was a basis for filing her grievance. King testified that she repeatedly called Peden between June and September 2010 to find out why her case was taking so long. During one call,

King asked for a refund so she could hire another attorney. As mentioned previously, when Peden finally contacted King on September 2, he insisted that she immediately pay him $300 for filing fees. King gave Peden the money that afternoon, but Peden did not file her case until six months later. On September 29, 2010, King sent Peden a letter requesting a refund because she was upset that there had been no activity on her case. King even threatened to file a disciplinary grievance because of the delay, which she did in February 2011.

{¶ 41} Accordingly, we find that the relator has proven that Peden failed to act with reasonable diligence in representing King, in violation of Prof.Cond.R. 1.3. Moreover, we find that Peden has engaged in conduct that adversely reflects on his fitness to practice law based on his failure to diligently pursue King's case, respond to her inquiries, update her on her case status, notify her about his lack of malpractice insurance, and hold her money in trust, in violation of Prof.Cond.R. 8.4(h).

*Failure to Cooperate in Disciplinary Investigation*

{¶ 42} Relator served Peden with each client grievance and requested that he respond to the allegations. Relator also served Peden with an investigative inquiry regarding the overdrafts of his client trust account. Despite these requests, Peden did not respond or otherwise cooperate in the disciplinary investigation. Peden did submit to a deposition after being subpoenaed by relator. But Peden failed to provide relator with various documents and information, despite his promises to do so.

{¶ 43} Because Peden repeatedly ignored the relator's investigative inquiries, we agree with the board that he violated Prof.Cond.R. 8.1(b) (requiring a lawyer to cooperate in an investigation of professional misconduct).

**Sanction**

{¶ 44} In recommending a sanction, the board considered the aggravating and mitigating factors listed in BCGD Proc.Reg. 10.

**{¶ 45}** In aggravation, the board found that Peden had (1) acted with a dishonest or selfish motive, (2) engaged in a pattern of misconduct, (3) committed multiple offenses, (4) failed to cooperate in the disciplinary process, (5) failed to make restitution, (6) committed prior disciplinary offenses, and (7) caused harm to vulnerable clients. *See* BCGD Proc.Reg. 10(B)(1)(a), (b), (c), (d), (e), (h), and (i).

**{¶ 46}** As to mitigating factors, the board noted that Peden's mental state loomed large over his case and his future. In his prior disciplinary case, we found that Peden's diagnosed mental disorder qualified as a mitigating factor under BCGD Proc.Reg. 10(B)(2)(g)(i) through (iv). *Columbus Bar Assn. v. Peden*, 118 Ohio St.3d 244, 2008-Ohio-2237, 887 N.E.2d 1183, ¶ 5-9. In the instant case, however, the board found that Peden submitted no evidence that his mental-health difficulties qualified as a mitigating factor. The board found no other mitigating factors. *See* BCGD Proc.Reg. 10(B)(2).

**{¶ 47}** The board recommended that Peden receive an indefinite suspension from the practice of law.

**{¶ 48}** The board also recommended that prior to reinstatement, Peden fulfill the following conditions: (1) provide proof of continuing and successful mental-health counseling and that he is fully competent to return to the practice of law, (2) demonstrate that he fully complied with his OLAP contract during his suspension, (3) attend a rigorous and comprehensive course in law-office management approved by relator, with renewed emphasis on client-trust-account management, (4) comply with all mandatory continuing-legal-education requirements imposed by this court, (5) pay the costs of this action as required by the court, (6) make full restitution, (7) comply with his suspension order in all respects, and (8) upon reinstatement, submit to a two-year probationary period during which he must (a) provide proof every six months that he is mentally competent to practice law, (b) be monitored by relator, (c) delegate the

management of his client trust account to an independent professional trained to manage trust accounts, and (d) permit relator to monitor his trust account.

*Analysis*

{¶ 49} Peden objects to the board's recommendation of an indefinite suspension. He challenges the board's findings of misconduct in each count, except count four (Nessley). Peden argues that his conduct warrants either probation or a six-month suspension.

{¶ 50} Peden specifically contends that he did not neglect his clients' legal matters, mismanage his client trust accounts, or misappropriate client funds. He also asserts that the overdrafts of his client trust accounts were inadvertent and did not involve client money. And Peden disputes the board's findings regarding his failure to notify clients about his suspension from the practice of law.

{¶ 51} Peden, however, has offered no evidence to support any of his claims. This alone is sufficient grounds to reject his objections. Moreover, Peden raised many of these same defenses before the board. As here, Peden's claims before the board were undercut by his failure to produce trust-account records, billing statements, or other financial documents that would account for the work performed for each grievant. In contrast, the relator has submitted overwhelming evidence that Peden repeatedly failed to (1) safeguard client funds, (2) perform work diligently and competently, (3) return calls and update clients about their cases, (4) maintain malpractice insurance and notify clients about the lack of coverage, (5) disclose his disciplinary suspension, (6) cooperate in the grievance investigations, and (7) make restitution to clients harmed by his misconduct.

{¶ 52} In addition to his lack of evidence, Peden has not cited a single legal authority that would justify a lesser sanction. In other cases involving the same misconduct as that committed by Peden, we have imposed indefinite suspensions. Indeed, we imposed an indefinite suspension in *Columbus Bar Assn. v. Boggs*, 129 Ohio St.3d 190, 2011-Ohio-2637, 951 N.E.2d 65, under strikingly

similar circumstances. The misconduct in *Boggs* involved a pattern of misconduct involving several clients and multiple offenses, and included mishandling of a client trust account, improper accounting of trust-account funds, neglect of clients' cases, failure to notify clients about lack of malpractice insurance, and a failure to make restitution. And Boggs, like Peden, had a prior disciplinary record. Unlike Peden, Boggs cooperated in the disciplinary process. *Id*. at ¶ 22-24.

{¶ 53} Likewise, in *Columbus Bar Assn. v. Van Sickle*, 128 Ohio St.3d 376, 2011-Ohio-774, 944 N.E.2d 677, we imposed an indefinite suspension on an attorney who had a prior disciplinary record and who engaged in a pattern of misconduct involving multiple offenses, including neglecting entrusted legal matters and failing to cooperate in the ensuing disciplinary investigation. Moreover, Van Sickle and Peden are similar in that both suffered from a diagnosed mental condition but did not submit evidence establishing that their condition qualified as a mitigating factor. *Id*. at ¶ 14.

{¶ 54} Accordingly, we adopt the board's recommendation and indefinitely suspend Peden from the practice of law. Moreover, we order that before Peden is reinstated to the practice of law, he shall (1) provide proof of continuing and successful mental-health counseling and that he is fully competent to return to the practice of law, (2) demonstrate that he fully complied with his OLAP contract during his suspension, (3) comply with all mandatory continuing-legal-education requirements imposed by this court, (4) as part of the general continuing-legal-education requirements under Gov.Bar R. X(3)(G), attend a rigorous and comprehensive course in law-office management approved by relator, with renewed emphasis on client-trust-account management, (5) pay the costs of this action, (6) make restitution in the amount of $1,018 to Ms. Plaisted, $3,026.25 to Mr. Culwell, $1,150 to the Nessleys, and $1,330 to Ms. Petrovski, all within 30 days of this order, (7) comply with his suspension order in all respects,

and (8) upon reinstatement, submit to a two-year probationary period during which he must (a) provide proof every six months that he is mentally competent to practice law, (b) be monitored by relator, (c) delegate management of his client trust account to an independent professional trained to manage trust accounts, and (d) permit relator to monitor his trust account. Costs are taxed to Peden.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

Lisa Pierce Reisz; and Bruce A. Campbell, Bar Counsel, and A. Alysha Clous, Assistant Bar Counsel, for relator.

John Joseph Peden, pro se.

_____