DISCIPLINARY COUNSEL *v.* WALLACE.

[Cite as *Disciplinary Counsel v. Wallace*, 138 Ohio St.3d 350,

2014-Ohio-1128.]

*Attorneys—Misconduct—Client trust account improprieties—Engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation—Two-year suspension, 12 months stayed on conditions.*

(No. 2013-0573—Submitted September 10, 2013—Decided March 26, 2014.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and

Discipline of the Supreme Court, No. 12-062.

_____

**Per Curiam**.

{¶ 1} Respondent, Paul Lawrence Wallace of Columbus, Ohio, Attorney Registration No. 0010369, was admitted to the practice of law in Ohio in 1980. We suspended him from the practice of law for six months in May 2000, based on his deliberate attempts to mislead his client into believing that the client's civil case was pending for more than a year after the United States District Court for the Northern District of Ohio had dismissed it. *Disciplinary Counsel v. Wallace*, 89 Ohio St.3d 113, 729 N.E.2d 343 (2000) ("*Wallace I*"). We denied his application for reinstatement in February 2001 because there were additional disciplinary proceedings pending against him and because it appeared that he had failed to comply with the requirements of Gov.Bar R. X(3)(G) (requiring a suspended attorney to complete one credit hour of continuing legal education for each month of the attorney's suspension and one hour of instruction related to professional conduct for each six months of the suspension). *Disciplinary Counsel v. Wallace*, 91 Ohio St.3d 1434, 741 N.E.2d 896 (2001).

**{¶ 2}** We dismissed the second disciplinary action against Wallace in March 2002, finding that his resubmission of a former client's background-investigation documents to the Ohio Attorney General's Office during his suspension was a ministerial act that did not constitute the practice of law. *Disciplinary Counsel v. Wallace*, 94 Ohio St.3d 414, 763 N.E.2d 1154 (2002) ("*Wallace II*"). We reinstated his license to practice law on March 6, 2002. *Disciplinary Counsel v. Wallace*, 94 Ohio St.3d 1249, 764 N.E.2d 438 (2002).

**{¶ 3}** On August 16, 2012, a probable-cause panel of the Board of Commissioners on Grievances and Discipline certified a two-count complaint filed by relator, disciplinary counsel, to the board. Having considered the parties' stipulated facts, evidence, and misconduct, Wallace's hearing testimony, and three letters from character witnesses, a panel of the board found that Wallace had engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation that adversely reflected on his fitness to practice law by (1) failing to hold a client's insurance settlement and a separate cash payment in a separate client trust account, (2) failing to maintain a record of the funds he held on behalf of the affected client, and (3) misappropriating the client's funds. The panel recommended that Wallace be suspended from the practice of law for two years, with six months stayed on conditions, and that he be required to serve one year of monitored probation.

**{¶ 4}** The board adopted the panel's findings of fact and misconduct and agreed with the panel's recommendation that Wallace be suspended for two years and serve one year of monitored probation on reinstatement, but it recommended that the stayed portion of that suspension be increased to one year. Wallace objects to the board's recommendation that he serve an actual suspension from the practice of law, arguing that a fully stayed suspension with monitored probation will adequately protect the public from future harm. We overrule his objection

and adopt the board's findings of fact and misconduct and its recommended sanction.

## Misconduct

### Count One

{¶ 5} In December 2008, Wallace represented Nigel Jackson in multiple legal and business matters, including (1) an insurance claim for the theft of Jackson's BMW, (2) the incorporation of his business, Who Done It Productions, L.L.C., (3) his efforts to publish a book he authored, (4) some real-estate matters involving Jackson and his cousin, (5) an unsuccessful claim for reimbursement of funeral expenses incurred by Jackson on behalf of Glen Jones, (6) a civil judgment against Jackson and his girlfriend, Aisha Towles, and (7) an insurance claim for the theft of property from Towles's vehicle.

{¶ 6} Jackson paid Wallace a $300 retainer, but it is not clear whether they reached an agreement regarding the fee for his services. Wallace claims that he agreed to handle the insurance claim for the stolen BMW for $200 per hour, but Jackson maintained that they never reached an agreement, and Wallace never submitted an invoice for his time.

{¶ 7} Jackson was arrested and charged with drug trafficking in March 2009. Although Wallace did not represent him in his criminal case, he visited Jackson in the Delaware County Jail on at least two occasions to discuss his other legal matters. During one of those visits, Jackson executed a limited power of attorney to permit Wallace to transfer the title for his BMW to his insurer, Liberty Mutual. The power of attorney erroneously appointed Jackson as his own attorney-in-fact, but Wallace testified that he successfully transferred the BMW title to the insurer.

{¶ 8} In late July 2009, Liberty Mutual issued a $32,132.80 check to Jackson and Towles and, pursuant to Jackson's instructions, mailed it to Wallace's office. Wallace informed Jackson that he would deposit the check into

his client trust account. Before depositing the check, he endorsed Jackson's and Towles's names without obtaining their express permission to do so.

{¶ 9} From August through October 2009, Wallace misappropriated Jackson's entire $32,132.80 insurance settlement, paying $21,000 to himself and using the remainder for other client obligations. In September 2009, Wallace spoke with Jackson and informed him that he would "net $24,000." Believing that the check was for $24,000, Jackson authorized Wallace to disburse that amount to others on his behalf, but Wallace did not have sufficient funds in his client trust account to do so. He deposited $2,500 that he had received from Towles into his client trust account and made a $1,000 distribution authorized by Jackson. Although Wallace did not maintain any records to substantiate the distributions he made on Jackson's behalf or his fee, his bank records show that he distributed $20,995 from his operating account to third parties on Jackson's behalf and retained $8,637.80 as his fee.

{¶ 10} In November 2009, Towles called Liberty Mutual and learned that the check for the stolen BMW was $32,132.80 rather than the $24,000 that Wallace had divulged to Jackson. When she confronted Wallace several days later, he told her that the difference between the two amounts represented his legal fees.

{¶ 11} On these facts, and in accordance with the parties' stipulations, the board found that Wallace violated Prof.Cond.R. 1.15(a) (requiring a lawyer to hold the property of clients in an interest-bearing client trust account, separate from the lawyer's own property), 1.15(a)(2) (requiring a lawyer to maintain a record for each client on whose behalf funds are held), 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law). The board also

4

found that there was insufficient evidence to establish an alleged violation of Prof.Cond.R. 1.15(d) and therefore dismissed it.

Count Two

**{¶ 12}** During Jackson's incarceration, he instructed Towles to deliver a bag containing an undisclosed amount of cash to Wallace to be held for future expenses associated with the publication of Jackson's book. Towles delivered the bag to Wallace at his office. Wallace did not retain any records to document the receipt of this cash, but he maintains that the bag contained $7,500. He deposited $2,500 of those funds into his client trust account on October 14, 2009, distributed $1,000 from the account to Jackson's company, and misappropriated the remaining $1,500 of that deposit by issuing a check for $500 to Owen Loan Servicing, L.L.C., and a check for $1,000 to himself. On November 24, 2009, he deposited the remaining $5,000 into his operating account, which also contained funds belonging to him, and issued a $10,000 check to Jackson's company from the account, representing the remainder of the $7,500 cash payment he had received from Towles and a final disbursement of the Liberty Mutual settlement proceeds.

**{¶ 13}** The parties stipulated and the board found that this conduct resulted in additional violations of Prof.Cond.R. 1.15(a), 1.15(a)(2), 8.4(c), and 8.4(h).

**Sanction**

**{¶ 14}** When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B).

**{¶ 15}** The panel and board adopted the parties' stipulated aggravating factors, agreeing that Wallace has a prior disciplinary record, acted with a selfish motive, and engaged in multiple offenses. *See* BCGD Proc.Reg. 10(B)(1)(a), (b), and (d). With regard to mitigation, they adopted the parties' stipulation that Wallace made a full and free disclosure during the disciplinary process, that he has a positive reputation in the legal community, and that the client was paid in full and suffered no financial harm as a result of Wallace's misconduct. *See* BCGD Proc.Reg. 10(B)(2)(d) and (e). They also accorded some mitigating effect to the fact that the six-month suspension we imposed in *Wallace I* resulted in an actual suspension of over 20 months because we had denied his application for reinstatement during the pendency of *Wallace II*, which was ultimately dismissed.

**{¶ 16}** Relator argued that the appropriate sanction for Wallace's misconduct is a two-year suspension with one year of monitored probation on his reinstatement to the practice of law. Wallace argued that a fully stayed suspension with monitored probation would adequately protect the public from future harm.

**{¶ 17}** The panel acknowledged our precedent, which identifies disbarment as the presumptive sanction for misappropriation of client funds but permits the imposition of lesser sanctions in the presence of significant mitigating factors. *See, e.g., Disciplinary Counsel v. Burchinal*, 133 Ohio St.3d 38, 2012-Ohio-3882, 975 N.E.2d 960, ¶ 17 (stating that the presumptive sanction for misappropriation of client funds is disbarment, but imposing a two-year suspension with 18 months stayed, in recognition of significant mitigating factors, including the absence of a disciplinary record, full cooperation with the disciplinary process, letters attesting to the attorney's diligence and good character, and a documented mental impairment that was being treated with good prognosis).

**{¶ 18}** But in recommending that we suspend Wallace for two years with six months stayed and require him to serve one year of monitored probation upon reinstatement, the panel considered five cases cited by relator in which we imposed sanctions ranging from an indefinite suspension to a six-month suspension.

**{¶ 19}** In *Columbus Bar Assn. v. Peden*, 134 Ohio St.3d 579, 2012-Ohio-5766, 984 N.E.2d 1, we indefinitely suspended an attorney, who had a prior disciplinary record, because he had neglected several client matters, commingled personal and client funds, failed to maintain adequate records of the client funds in his possession, failed to return unearned funds, and failed to cooperate in the disciplinary investigation. *Id*. at ¶ 16, 22, 27, 33, 38, 43, 54.

**{¶ 20}** We imposed a two-year suspension, followed by one year of monitored probation, and continuing-legal-education requirements on an attorney who had misappropriated client funds to pay personal and business expenses, failed to promptly deliver funds that clients were entitled to receive, and fabricated a fee dispute in an effort to defend his actions. *Columbus Bar Assn v. King*, 132 Ohio St.3d 501, 2012-Ohio-873, 974 N.E.2d 1180, ¶ 6, 16. Unlike Wallace, King did not have a prior disciplinary record in his more than 30 years of practice. *Id.* at ¶ 13.

**{¶ 21}** In *Disciplinary Counsel v. Simon-Seymour*, 131 Ohio St.3d 161, 2012-Ohio-114, 962 N.E.2d 309, ¶ 3-6, 12, we suspended an attorney for two years with six months stayed on conditions after she had misappropriated money from a decedent's estate, overdrew her client trust account, falsely represented to the probate court that she had satisfied certain estate obligations that she had not paid, and failed to reasonably communicate with her clients. Mitigating factors included that Simon-Seymour had no prior discipline, made complete restitution to the affected client, and cooperated in the disciplinary process, while the only

aggravating factor was that she had engaged in a pattern of misconduct by mishandling client funds over a period of several years. *Id.* at ¶ 9.

{¶ 22} Likewise, in *Disciplinary Counsel v. Gildee*, 134 Ohio St.3d 374, 2012-Ohio-5641, 982 N.E.2d 704, ¶ 5-14, 18, we suspended an attorney for two years, with the second year stayed on the conditions that she commit no further misconduct and make full restitution to the affected client after she had misappropriated more than $8,000 in client funds and made false statements to the relator during the course of the disciplinary investigation. Mitigating factors in that case, including the absence of a prior disciplinary record, full and free disclosure to the board during the disciplinary process, positive character evidence, and Gildee's genuine expression of remorse at the disciplinary hearing, were balanced against aggravating factors, including a dishonest and selfish motive, multiple offenses, resulting harm to the victim, and Gildee's failure to make restitution. *Id.* at ¶ 16-17.

{¶ 23} At the opposite end of the spectrum, we imposed a six-month suspension to be served consecutively to an attorney's ongoing suspension for previous misconduct, after finding that he engaged in fraud and dishonesty, failed to deposit and maintain client funds in a separate client trust account, failed to maintain complete records of client funds in his possession, and used funds belonging to a client to pay personal and business expenses. *Disciplinary Counsel v. Manning*, 119 Ohio St.3d 52, 2008-Ohio-3319, 891 N.E.2d 743.

{¶ 24} Based on these cases, the panel's recommended sanction of a two-year suspension with six months stayed, plus one year of monitored probation, falls within the range of sanctions we have imposed for comparable misconduct. The board, however, modified the panel's recommendation to stay the entire second year of the suspension.

{¶ 25} Wallace objects to the board's recommendation and argues that any suspension we impose should be stayed in its entirety because he has put systems

in place to prevent future misconduct and he has already served an additional 14 months of actual suspension beyond the six-month suspension imposed in *Wallace I,* despite our dismissal of the alleged misconduct in *Wallace II*. But the only case that Wallace cites in which we imposed a fully stayed suspension for comparable conduct is *Disciplinary Counsel v. Edwards*, 134 Ohio St.3d 271, 2012-Ohio-5643, 981 N.E.2d 857. And *Edwards* involved significant mitigating factors that are not present in this case—the attorney had practiced more than 30 years with no prior discipline and his diagnosed mental disability was found to have contributed to the charged misconduct. *Id.* at ¶ 10, 15.

{¶ 26} Although the misconduct, aggravating factors, and mitigating factors in the cases cited by the panel and board are not identical to the circumstances presented here, they are more analogous to the present case than are the factors in *Edwards*. We universally impose a period of actual suspension for attorney misconduct involving dishonesty and the misappropriation of client funds. *See Disciplinary Counsel v. Fowerbaugh*, 74 Ohio St.3d 187, 190, 658 N.E.2d 237 (1995) (holding that misconduct involving dishonesty, fraud, deceit, or misrepresentation warrants an actual suspension from the practice of law).

{¶ 27} Despite Wallace's protests to the contrary, the recommended sanction already takes into account the mitigating factors that he urges us to consider. Indeed, in its report, the panel stated that its recommendation that the final six months of the suspension be stayed is based solely on the fact that he had served an additional 14 months in excess of the six-month suspension we imposed in *Wallace I*. The board recommended extending the stay to the entire second year of the two-year suspension. Based on the foregoing, we overrule Wallace's objections, adopt the findings of fact and conclusions of law of the board, and find that a two-year suspension, with the second year stayed, plus a one-year period of monitored probation upon Wallace's reinstatement to the practice of law is the appropriate sanction in this case.

{¶ 28} Accordingly, Paul Lawrence Wallace is suspended from the practice of law in Ohio for two years, with the second year stayed on the condition that he commit no further misconduct. On reinstatement to the practice of law, he will serve a one-year period of monitored probation in accordance with Gov.Bar R. V(9). Costs are taxed to Wallace.

Judgment accordingly.

PFEIFER, O'DONNELL, KENNEDY, and FRENCH, JJ., concur.

O'CONNOR, C.J., and LANZINGER and O'NEILL, JJ., dissent and would decline to stay any portion of the two-year suspension.

_____

Scott Drexel, Disciplinary Counsel, and Joseph M. Caligiuri, Senior Assistant Disciplinary Counsel, for relator.

Paul Lawrence Wallace, pro se.

_____