**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as**
*Columbus Bar Assn. v. Keating,* **Slip Opinion No. 2018-Ohio-4730.]**

<u>NOTICE</u>

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-4730

COLUMBUS BAR ASSOCIATION *v*. KEATING.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Columbus Bar Assn. v. Keating,* Slip Opinion No. 2018-Ohio-4730.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct—Conditionally stayed six-month suspension.*

(No. 2017-1740—Submitted February 27, 2018—Decided November 28, 2018.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2016-071.

_____

**Per Curiam.**

{¶ 1} Respondent, Bradley D. Keating, of Gahanna, Ohio, Attorney Registration No. 0076341, was admitted to the practice of law in Ohio in 2003.

{¶ 2} In a complaint certified to the Board of Professional Conduct on December 6, 2016, relator, Columbus Bar Association, charged Keating with numerous violations of the professional-conduct rules. Among other things, relator

alleged that Keating failed to maintain proper client-trust-account records, failed to properly identify and remit payment for medical treatment provided to three of his firm's personal-injury clients, and failed to inform his clients that he did not maintain professional-liability insurance.

{¶ 3} The parties submitted stipulations of fact, some misconduct, and aggravating and mitigating factors. They also agreed that numerous alleged violations should be dismissed, but several remained contested.

{¶ 4} The matter proceeded to a hearing before a panel of the board. The panel found that Keating committed 12 of the charged rule violations and unanimously dismissed 17 others, including 14 that the parties agreed to dismiss. The panel recommended that Keating be suspended from the practice of law for six months, with the entire suspension stayed on conditions that included a period of monitored probation and continuing legal education ("CLE") in client-trust-account management. The board adopted the panel's findings of fact, all but one of its conclusions of law, and its recommended sanction.

{¶ 5} Relator does not object to the length of the suspension that the board recommended but does object to the "shortage of conditions" and urges us to impose an additional condition on Keating's stayed suspension: that he must remit all the funds that are being held in a separate client trust account to the Ohio Department of Commerce's Division of Unclaimed Funds.

{¶ 6} For the reasons that follow, we overrule relator's objection, adopt the board's report and recommendation, and suspend Keating from the practice of law for six months, with the entire suspension stayed on the conditions recommended by the board.

**Board Findings of Misconduct**

*Stipulated Recordkeeping Violations*

{¶ 7} From May 2011 through August 2011, three separate clients ("Case One," "Case Two," and "Case Three") retained Keating's firm to pursue

2

automobile-related personal-injury claims. Case Three was accepted by Keating's firm on the basis of a contingent fee. Although the client in Case Three signed the contingent-fee agreement, neither Keating nor any other associate in the firm signed the contract.

{¶ 8} In all three cases, the firm agreed to pay Southside Therapy Group, L.L.C., d.b.a. Chiropractic Therapy South ("Southside Therapy"), for each client's chiropractic treatment out of any settlement or judgment proceeds. In Cases One and Two, Keating's firm had negotiated a reduction in chiropractic fees with Dr. Gordon Spurling, the owner of Southside Therapy. In total, Southside Therapy was owed approximately $4,175 from the three clients. And by early 2012, all three cases had settled out of court.

{¶ 9} Although Keating claimed that the firm had paid Southside Therapy by check, subpoenaed bank records showed that in Case Two, the check that was issued by Keating's firm had been made payable to the wrong chiropractic office. And in Cases One and Three, the checks that were issued by Keating's firm had never been negotiated by Southside Therapy. In early October 2015, Dr. Spurling filed a grievance against Keating. Subsequently, Keating paid Dr. Spurling in full for the services at issue.

{¶ 10} In accord with the parties' stipulations and with respect to each of these matters, the panel and the board found that Keating's conduct violated Prof.Cond.R. 1.15(a)(5) (requiring a lawyer to perform and retain a monthly reconciliation of the funds held in the lawyer's client trust account) and 1.15(d) (requiring a lawyer to promptly render a full accounting of funds or property in which a client or a third party has an interest on the request of the client or the third party). They also agreed that by failing to sign the contingent-fee contract with the client in Case Three, Keating violated Prof.Cond.R. 1.5(c)(1) (requiring a lawyer to set forth a contingent-fee agreement in a writing signed by both the client and the lawyer).

*Contested Recordkeeping Violations*

**{¶ 11}** From 2003 until 2009, Keating was an associate attorney at Magelaner & Associates, Ltd.[1]  According to Keating, in early 2008, he and the firm's owner, Thomas L. Magelaner, began noticing certain accounting discrepancies, which led them to believe that their accounting firm was stealing money from their client trust account.  And the accounting firm refused to provide records that would enable Keating and Magelaner to identify the source and ownership of all the funds in the client trust account.  Therefore, Keating and Magelaner decided to leave their earned attorney fees in the client trust account to ensure that there would be ample funds to cover any client or third-party claims.  In March 2008, Keating and Magelaner discharged the accounting firm, retained a new accountant, and opened a second client trust account ("second account").  By August 2008, Keating and Magelaner had transferred all their client-trust funds to the second account and the original, potentially compromised account had a zero balance.

**{¶ 12}** The firm used the second account in its daily operations until July 2011.  At that time, Keating and Magelaner transferred $307,368.89 from the second account to a new client trust account ("third account").  Keating and Magelaner decided to leave all the funds for which they could not identify an owner in the second account. As of December 31, 2011, the balance in the second account was $85,214.89.

**{¶ 13}** Effective January 1, 2012, Keating purchased Magelaner's interest in the law firm and renamed it The Keating Firm, Ltd.  As the firm's sole owner and managing member, Keating assumed responsibility for all the firm's recordkeeping and accounting obligations.  As of May 25, 2017, the second account

---

1.  When Keating became a partner in 2009, the firm's name changed to Magelaner, Keating & Associates.

had a balance of $74,517.14 (the "unidentified funds") and the owner or owners of those funds remained unidentified.

{¶ 14} In an effort to account for and determine the ownership of the unidentified funds, Keating retained Rebekah A. Smith, a certified public accountant with a certification in financial forensics. Smith analyzed the second account and the firm's recordkeeping policies and procedures and prepared two separate reports—one report giving Smith's opinion as to who owned the unidentified funds and the second report giving Smith's opinion as to whether the firm's recordkeeping policies and procedures were reasonable and accurate. Based on her analysis, Smith concluded that "the funds remaining in the Keating Firm's [second account] are most likely the profits of the Keating firm and it is unlikely that they are client funds." Smith also found that "the Keating Firm's past and current policies and procedures related to its [client trust] account[s] are reasonable to ensure accurate record keeping." Smith made these conclusions "to a reasonable degree of professional certainty."

{¶ 15} The panel found that Keating satisfied his burden to account for the funds held in the second account based on (1) Smith's forensic analysis of the account and her conclusion that the firm owned all the funds in the account, (2) Keating's testimony that no one had made any claim to the unidentified funds for at least six years, (3) the absence of any evidence from relator that any client or third party was asserting a claim to the unidentified funds, and (4) apart from the problems associated with the three payments to Dr. Spurling, the absence of any evidence from relator that Keating or Magelaner failed to pay any prior clients or third parties from one of their client trust accounts. Nonetheless, the panel found that Keating's conduct violated Prof.Cond.R. 1.15(a)(3) (requiring a lawyer to maintain for seven years a record for the lawyer's client trust account, setting forth the name of the account, date, amount, and client affected by each credit and debit), 1.15(a)(5), and 1.15(b) (permitting a lawyer to deposit the lawyer's own funds in a

client trust account for the sole purpose of paying or obtaining a waiver of bank service charges).

{¶ 16} Citing the insufficiency of relator's evidence, the panel unanimously dismissed relator's allegation that Keating had violated Prof.Cond.R. 1.15(d) (requiring a lawyer to promptly deliver funds or other property that the client is entitled to receive) and 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law).

{¶ 17} The board accepted the panel's findings and recommendation with respect to this conduct, except that it also voted to dismiss the alleged violation of Prof.Cond.R. 1.15(b).

*Stipulated Professional-Liability-Insurance Violations*

{¶ 18} In December 2015, Keating's insurance carrier terminated his professional-liability insurance, and he did not obtain new insurance coverage until July 31, 2017. However, Keating did not inform his existing clients that he no longer maintained professional-liability insurance. Nor did he inform new clients that he did not have professional-liability insurance. The parties stipulated—and the panel and the board agreed—that Keating's conduct violated Prof.Cond.R. 1.4(c) (requiring a lawyer to inform the client at the time of engagement or at any time subsequent to the engagement if the lawyer does not maintain professional-liability insurance and obtain a signed acknowledgment of that notice from the client) and 1.4(c)(1) (requiring a lawyer to maintain a copy of a client's signed acknowledgment that the attorney does not maintain professional-liability insurance for five years after the representation is terminated).

**Recommended Sanction**

{¶ 19} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, relevant aggravating and mitigating factors, and the sanctions imposed in similar cases. *See* Gov.Bar R. V(13)(A).

{¶ 20} The only aggravating factor present in this case is that Keating committed multiple offenses. *See* Gov.Bar R. V(13)(B)(4).

{¶ 21} As mitigating factors, the parties stipulated and the board found that Keating (1) does not have a prior disciplinary record, (2) has not exhibited a dishonest or selfish motive, (3) made full restitution to Dr. Spurling and modified his office practices and procedures with regard to his client trust account, and (4) demonstrated a cooperative attitude toward the disciplinary proceedings. *See* Gov.Bar R. V(13)(C)(1) through (4).

{¶ 22} Because relator had recommended that Keating receive a fully stayed one-year suspension, the board reviewed several cases that relator cited in support of its recommended sanction, including *Allen Cty. Bar Assn. v. Schramski*, 124 Ohio St.3d 465, 2010-Ohio-630, 923 N.E.2d 603, and *Cleveland Metro. Bar Assn. v. Walker*, 142 Ohio St.3d 452, 2015-Ohio-733, 32 N.E.3d 437. In both cases, the attorneys failed to maintain proper client-trust-account records, commingled personal funds with client funds, and used their client trust accounts to pay personal and business expenses. Additionally, Schramski did not carry professional-liability insurance for approximately 22 years and never notified her clients of this fact. And Walker failed to (1) inform a client of decisions and circumstances that required the client's informed consent and (2) promptly notify that client when Walker had received settlement proceeds on that client's behalf. The board found that Keating's misconduct was not as egregious as Schramski's and Walker's.

{¶ 23} Instead, the board focused on numerous cases in which we imposed conditionally stayed six-month suspensions or issued a public reprimand for client-trust-account violations. *See, e.g.*, *Disciplinary Counsel v. Fletcher*, 122 Ohio St.3d 390, 2009-Ohio-3480, 911 N.E.2d 897; *Columbus Bar Assn. v. Peden*, 118 Ohio St.3d 244, 2008-Ohio-2237, 887 N.E.2d 1183; *Disciplinary Counsel v. Bricker*, 137 Ohio St.3d 35, 2013-Ohio-3998, 997 N.E.2d 500. Like Schramski and Walker, Fletcher, Peden, and Bricker failed to maintain proper client-trust-account

records and commingled personal funds with client funds. *Fletcher* at ¶ 5; *Peden* at ¶ 3; *Bricker* at ¶ 9. Additionally, Fletcher and Peden misappropriated client funds by withdrawing unearned fees and overdrawing their client trust accounts. *Fletcher* at ¶ 6, *Peden* at ¶ 3. And in each case, the attorney received either a conditionally stayed six-month suspension or a public reprimand. *Fletcher* at ¶ 3 (six months, all stayed); *Peden* at ¶ 9 (six months, all stayed); *Bricker* at ¶ 33 (public reprimand).

{¶ 24} Here, the board found that certain circumstances surrounding the unidentified funds were mitigating factors. The board found that Keating was placed in a no-win situation when accounting for irregularities that arose during his tenure as an associate of Magelaner & Associates, Ltd. The law firm's accountant was either performing incompetently or stealing funds from the law firm's client trust account and refused to provide the information that another accountant would need to reconcile the account. Under these circumstances, the board believed that Keating and Magelaner made a rational decision to open a new client trust account, transfer existing client-trust funds into that account, and leave earned attorney fees in the original account to cover obligations to pay clients and third parties. While the board suggested that Keating and Magelaner should have been more prompt in their efforts, the board also believed that Keating and Magelaner acted in good faith to protect their clients and the rights of third parties who may have had claims against the funds.

{¶ 25} Therefore, the board recommended that Keating be suspended from the practice of law in Ohio for six months, with the entire suspension stayed on the conditions that he (1) serve a two-year period of monitored probation, (2) employ an individual with accounting expertise to ensure proper management of his client trust account, (3) complete three hours of CLE related to client-trust-account management during each year of his stayed suspension and monitored probation, and (4) engage in no further misconduct.

**Relator's Objection to the Board's Recommended Sanction**

{¶ 26} Relator objects to the board's recommended sanction and urges us to impose an additional condition on Keating's probation. Specifically, relator argues that we should require Keating to submit the entire amount of the unidentified funds in the second account—$74,517.14—to the Ohio Department of Commerce's Division of Unclaimed Funds and that Keating should follow the procedures as detailed in R.C. Chapter 169 to recoup any amount that Keating would be claiming as attorney fees. Furthermore, relator objects to the board's findings to the extent that the board suggests that relator bears some responsibility for the uncertainty regarding the ownership of the unidentified funds.

{¶ 27} In response, Keating contends that relator has conflated its burden of proving his alleged misconduct by clear and convincing evidence, *see* Gov.Bar R. V(12)(I), with Keating's duty to safeguard and account for client funds, *see* Prof.Cond.R. 1.15. Keating argues that the evidence that has been presented throughout these proceedings demonstrates that (1) no client or third party has asserted any claim to the unidentified funds, (2) the last payment made from the second account was at least six years ago, and (3) a forensic accountant concluded that all the funds are most likely the profits of The Keating Firm, Ltd. While Keating does not object to a requirement that he disclose to relator how the funds will be distributed, he argues that the funds are not "unclaimed" and that he is not a "holder" as those terms are defined in R.C. 169.01(B)(1) and (D)(1), respectively.

{¶ 28} In a disciplinary proceeding, the relator bears the burden of proving an attorney's misconduct by clear and convincing evidence. *Disciplinary Counsel v. Stafford*, 131 Ohio St.3d 385, 2012-Ohio-909, 965 N.E.2d 971, ¶ 21; Gov.Bar R. V(12)(I). The clear-and-convincing standard is an "intermediate standard—'more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.' " *Disciplinary Counsel v. Stafford*, 128 Ohio St.3d 446, 2011-Ohio-1484, 946 N.E.2d 193, ¶ 55, quoting *Cross v.*

*Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954). Typically, cases involving client-trust-account violations come to light after a client alleges that he has not received all the funds to which he is entitled. Here, relator has presented evidence showing that Keating has more than $74,000 in his second account and alleges that his records are insufficient to reveal the identity or the whereabouts of any client who could claim ownership of any amount of those funds. But there is no evidence that relator has conducted even the most rudimentary investigation into whether the records that Keating maintained were sufficient to resolve the question of ownership. Indeed, the panel and the board dismissed an alleged violation of Prof.Cond.R. 1.15(d), which requires a lawyer to notify and to promptly deliver funds or other property to his client when the client has a lawful interest in those funds or property. The decision to dismiss this violation was undoubtedly rooted in relator's failure to meet its burden of proof—i.e., demonstrating, through clear and convincing evidence, that any of Keating's clients were entitled to receive any portion of those funds.

{¶ 29} For his part, Keating retained Smith, a forensic accountant, and produced a number of source documents for her review, including (1) client files dating back to at least 2006, (2) deposit slips for all the law firm's client trust accounts dating back to 2005, (3) bank statements for the second and third client trust accounts, and (4) bank reconciliations for the client trust accounts for all relevant years. After examining the receipts and disbursements from approximately 20 cases that were picked at random, Smith found no irregularities in the sample.

{¶ 30} On the other hand, Smith did not examine any of the client files that closed before Keating and Magelaner discharged their first accountant in March 2008. And although she stated that she held her opinion "to a reasonable degree of professional certainty," Smith couched that opinion in equivocal terms: "In my opinion, the funds remaining in the Keating Firm's [second account] *are most likely*

the profits of the Keating Firm and *it is unlikely* that they are client funds." (Emphasis added.) Therefore, Smith's report leaves open the possibility that clients or third parties—some dating back to Keating's time as an associate attorney with the firm—may still have a valid claim against those funds. Nonetheless, Smith's reports and opinions constitute some evidence that the unidentified funds belong to The Keating Firm, Ltd., and not to Keating's clients or third parties.

{¶ 31} Given the highly unusual facts of this case and the significant deficiencies in the record before us, we decline relator's invitation to address the proper distribution of the unidentified funds in the context of this disciplinary proceeding.

{¶ 32} Based on the foregoing, we overrule relator's objection and adopt the board's findings of fact, conclusions of law, and recommended sanction.

### Disposition

{¶ 33} Accordingly, Bradley D. Keating is suspended from the practice of law in Ohio for six months, with the entire suspension stayed on the conditions that he serve a two-year period of monitored probation in accordance with Gov.Bar R. V(21), employ an individual with accounting expertise to ensure proper management of his client trust account, complete three hours of CLE related exclusively to client-trust-account management during each year of his stayed suspension and probation in addition to the CLE requirements of Gov.Bar R. X, and engage in no further misconduct. If Keating fails to comply with any condition of the stay, the stay will be lifted and he will serve the full six-month suspension. Costs are taxed to Keating.

Judgment accordingly.

O'CONNOR, C.J., and O'DONNELL, KENNEDY, FRENCH, FISCHER, DEWINE, and DEGENARO, JJ., concur.

_____

Luper, Neidenthal & Logan and Amy L. Bostic; and Lori J. Brown, Bar Counsel, and Judith M. McInturff and A. Alysha Clous, Assistant Bar Counsel, for relator.

James E. Arnold & Associates, L.P.A., and Alvin E. Mathews Jr., for respondent.

_____