**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Cleveland Metro. Bar Assn. v. Watson*, **Slip Opinion No. 2022-Ohio-2212.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-2212

CLEVELAND METROPOLITAN BAR ASSOCIATION *v.* WATSON.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Cleveland Metro. Bar Assn. v. Watson*, Slip Opinion No. 2022-Ohio-2212.]

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct—One-year suspension, stayed in its entirety on conditions.*

(No. 2022-0152—Submitted March 8, 2022—Decided June 30, 2022.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2021-016.

_____

**Per Curiam.**

**{¶ 1}** Respondent, Myron Parnell Watson, of Cleveland, Ohio, Attorney Registration No. 0058583, was admitted to the practice of law in Ohio in 1992.

**{¶ 2}** In an eight-count June 2021 complaint, relator, Cleveland Metropolitan Bar Association, alleged that Watson had committed 23 ethical violations in his representation of seven personal-injury clients. Among other

things, relator alleged that Watson had neglected several client matters, failed to reasonably communicate with some of the clients, failed to prepare closing statements in two contingent-fee cases, failed to promptly pay his clients' medical bills out of their settlement proceeds, and failed to maintain required client-trust-account records. Watson admitted to 16 of the alleged rule violations in his answer to the complaint. The parties later entered into comprehensive stipulations in which Watson again admitted to those rule violations and relator agreed to dismiss seven others, including all of Count Seven. The parties submitted 20 stipulated exhibits, stipulated to aggravating and mitigating factors, and jointly recommended that this court impose a one-year conditionally stayed suspension for Watson's misconduct.

{¶ 3} The matter proceeded to a hearing before a three-member panel of the Board of Professional Conduct, at which Watson was the sole witness. The panel found that Watson had engaged in the stipulated misconduct and, based on the stipulated aggravating and mitigating factors and the additional aggravating factor that Watson had committed multiple violations, Watson's testimony, and this court's precedent, the panel recommended that Watson be suspended from the practice of law for one year, with the entire suspension stayed on the conditions proposed by the parties. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction. We adopt the board's findings of misconduct and recommended sanction.

**Misconduct**

*Counts One and Six: The Horton and Brown Matters*

{¶ 4} In November 2016, Yolanda Horton retained Watson to represent her in a personal-injury matter, and Horton and Watson executed a contingent-fee agreement. To secure the costs of Horton's related medical treatment, Horton and Watson also signed a letter of protection granting Chagrin Medical Center a lien against the proceeds of any settlement or trial disposition in Horton's personal-injury case.

2

{¶ 5} In January 2018, Watson settled Horton's case for $10,000. He did not prepare a closing statement detailing the distribution of those proceeds, nor did he timely satisfy Chagrin Medical Center's $3,353 lien against the proceeds. In addition, Watson has stipulated that he failed to promptly satisfy a similar lien relating to medical services provided to another client, Reginald Brown.

{¶ 6} The board found that Watson violated Prof.Cond.R. 1.5(c)(2) (requiring a lawyer entitled to compensation under a contingent-fee agreement to prepare a closing statement to be signed by the lawyer and the client that details the calculation of the lawyer's compensation and any costs and expenses deducted from the judgment or settlement) in the Horton matter and that he violated Prof.Cond.R. 1.15(d) (requiring a lawyer to promptly deliver funds or other property that a client or a third party is entitled to receive) in both the Horton and Brown matters. We adopt these findings of misconduct.

*Counts Two through Five: The Middlebrooks and Williams Matters*

{¶ 7} At various times in 2016 and 2017, Watson agreed to represent four other clients in personal-injury matters. He has admitted that he failed to act with reasonable diligence on behalf of those clients and that he failed to reasonably communicate with them.

{¶ 8} One of the clients, Trudie Middlebrooks, had had frequent conversations with Watson's staff, who assured her that Watson was working on her case, but those communications diminished over time to the point that she "gave up" on the matter. The insurance company involved in that matter denied Trudie's claim, stating that it was not liable for her injury. Watson failed to file a lawsuit on Trudie's behalf before the statute of limitations on her claim elapsed, and he did not tell her that he was no longer working on her case.

{¶ 9} Although Watson filed complaints on behalf of two of the other clients, Trudi-Faith and Shafonte Middlebrooks, those cases were dismissed for failure of service and Watson did not refile them. He also did not inform Trudi-

Faith and Shafonte that their cases had been dismissed until after their claims were time-barred and relator had commenced its investigation into his misconduct. In November 2020, he paid each of them $2,500.

**{¶ 10}** Watson rejected a $5,000 settlement offer on behalf of another client, Tiffane Williams, but he never filed a lawsuit on her behalf. In December 2019, he informed Williams that the statute of limitations on her claims had elapsed, and he paid her $5,000.

**{¶ 11}** The parties stipulated and the board found that Watson's conduct with respect to each of these four clients violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client) and 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of the client's matter), and that his conduct with respect to each of the Middlebrooks clients also violated Prof.Cond.R. 1.4(a)(2) (requiring a lawyer to reasonably consult with the client about the means by which the client's objectives are to be accomplished). We adopt these findings of misconduct.

*Count Eight: Client-Trust-Account Records*

**{¶ 12}** Watson has admitted that he failed to maintain proper client-trust-account records for each client and that he failed to perform monthly reconciliations of his client trust account. He admitted and the board found that this conduct violated Prof.Cond.R. 1.15(a)(2) (requiring a lawyer to maintain a record for each client that sets forth the name of the client, the date, amount, and source of all funds received on behalf of the client, and the current balance for each client) and 1.15(a)(5) (requiring a lawyer to perform and retain a monthly reconciliation of the funds held in the lawyer's client trust account). We adopt these findings of misconduct.

**Sanction**

**{¶ 13}** When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the attorney violated, the

4

aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 14} Just two aggravating factors are present—Watson engaged in a pattern of misconduct and committed multiple offenses. *See* Gov.Bar R. V(13)(B)(3) and (4).

{¶ 15} As for mitigating factors, the parties stipulated and the board found that Watson has no prior disciplinary record, did not act with a dishonest or selfish motive, made a timely, good faith effort to make restitution or to rectify the consequences of his misconduct, cooperated in relator's investigation, and submitted evidence of his good character and reputation. *See* Gov.Bar R. V(13)(C)(1) through (5). The board emphasized that Watson was very cooperative during the disciplinary process, accepted responsibility for his misconduct, and exhibited an open, sincere, and contrite attitude. Watson explained during his hearing testimony that when he expanded his primarily criminal-law practice to include personal-injury practice, he did not establish the procedures necessary to ensure proper and timely representation of all his clients. He stated that he had made staffing and office-procedure changes to prevent these issues from reoccurring and to ensure that he provides competent and ethical representation to his civil-law clients going forward. The board found Watson's testimony to be sincere and persuasive and noted that Watson had "submitted very strong letters of support attesting to his good character and reputation."

{¶ 16} In addition, Watson paid Chagrin Medical Center $28,632 to honor the letters of protection that he had issued with respect to each of the clients involved in this case and two others—including clients for whom there was no financial recovery due to his own neglect.

{¶ 17} The board adopted the parties' joint recommendation that Watson be suspended from the practice of law for one year, with the entire suspension stayed on the conditions that he (1) complete six hours of continuing legal education

("CLE") focused on law-office and client-trust-account management, in addition to the requirements of Gov.Bar R. X, (2) serve a one-year term of monitored probation in accordance with Gov.Bar R. V(21), and (3) commit no further misconduct.

{¶ 18} In support of that recommendation, the board relied primarily on this court's decision in *Cleveland Metro. Bar Assn. v. Rosett*, 154 Ohio St.3d 117, 2018-Ohio-3861, 111 N.E.3d 1166. Rosett had neglected five separate client matters, failed to maintain required client-trust-account records, and failed to adequately protect client funds held in her client trust account. *Id.* at ¶ 17. As for aggravating factors, she had a prior brief attorney-registration suspension and committed multiple offenses. *Id.* at ¶ 2, 13. Mitigating factors included the absence of a dishonest or selfish motive, Rosett's timely, good-faith efforts to rectify the consequences of her misconduct, and evidence of her good character. *Id.* at ¶ 13. We suspended her from the practice of law for one year and stayed the suspension in its entirety on conditions almost identical to those recommended here. *Id.* at ¶ 17.

{¶ 19} The board also found that its recommended sanction was consistent with the sanction we imposed for similar misconduct in five other cases. For example, in *Trumbull Cty. Bar Assn. v. Yakubek*, 142 Ohio St.3d 455, 2015-Ohio-1570, 32 N.E.3d 440, ¶ 2, 15-16, we imposed a conditionally stayed one-year suspension on an attorney who had engaged in a pattern of neglect regarding four separate client matters, failed to reasonably communicate with those clients, and failed to return two unearned fees until after those clients had filed grievances against her. And in *Disciplinary Counsel v. Peters*, 158 Ohio St.3d 360, 2019-Ohio-5219, 142 N.E.3d 672, ¶ 20-21, we imposed a conditionally stayed one-year suspension on an attorney who had neglected and provided incompetent representation to two separate clients. Peters missed the statute of limitations for the client's claims in one of those cases but agreed to make restitution equal to the client's damages, *id.* at ¶ 6-7, 15—though in contrast to Watson, Peters had not

made the payment by the time of his disciplinary hearing, *see id.* at ¶ 5. Peters also failed to notify one of the affected clients that he had received funds belonging to the client, failed to deposit those funds into his client trust account, and failed to reasonably communicate with that client. *Id.* at ¶ 20. We suspended Yakubek and Peters for one year but stayed the suspensions in their entirety on conditions comparable to those recommended by the board in this case.

{¶ 20} After reviewing the record in this case and our precedent, we agree that a one-year suspension, stayed in its entirety on the conditions recommended by the board, is the appropriate sanction for Watson's misconduct.

{¶ 21} Accordingly, Myron Parnell Watson is suspended from the practice of law in Ohio for one year, stayed in its entirety on the conditions that he (1) complete six hours of CLE focused on law-office and client-trust-account management, in addition to the requirements of Gov.Bar R. X, (2) serve a one-year term of monitored probation pursuant to Gov.Bar R. V(21), with the monitoring focused on law-office and client-trust-account management, and (3) commit no further misconduct. If Watson fails to comply with the conditions of the stay, the stay will be lifted and he will serve the entire one-year suspension. Costs are taxed to Watson.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, FISCHER, DEWINE, STEWART, and BRUNNER, JJ., concur.

DONNELLY, J., not participating.

_____

Christopher J. Klasa, Bar Counsel, for relator.

Donald C. Williams, for respondent.

_____